Filed 4/18/13  North Kern Water Storage Dist. v. State Wat. Resources Cont. Bd. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NORTH KERN WATER STORAGE DISTRICT et al., | F063989 |
| Plaintiffs and Appellants, | (Super. Ct. No. S-1500-CV-270613) |
| v. | |
| STATE WATER RESOURCES CONTROL BOARD, | **OPINION** |
| Defendant and Respondent; | |
| CITY OF BAKERSFIELD, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Law Offices of Young Wooldridge, Scott K. Kuney, Ernest A. Conant, and Alan F. Doud for Plaintiff and Appellant North Kern Water Storage District.

Best, Best & Krieger, Jill N. Willis and Jason Ackerman for Plaintiff and Appellant City of Shafter.

McMurtrey, Hartsock & Worth, Gene R. McMurtrey and Daniel N. Raytis for Plaintiff and Appellant Buena Vista Water Storage District.

Somach Simmons & Dunn and Nicholas A. Jacobs for Plaintiff and Appellant Kern County Water Agency.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Assistant Attorney General, Denise Ferkich Hoffman and Matthew G. Bullock, Deputy Attorneys General, for Defendant and Respondent.

Virginia Gennaro, City Attorney; Duane Morris and Colin L. Pearce for Real Party in Interest and Respondent.

-ooOoo-

This is an appeal from a judgment denying a petition for writ of administrative mandate. (See Code Civ. Proc., § 1094.5, subd. (f).) The trial court concluded appellants were beneficially interested parties with a right to bring the petition to review respondent's administrative decision and, addressing the merits of the petition, rejected appellants' challenges to the administrative decision. We conclude, to the contrary, that appellants have not demonstrated a beneficial interest, as that term is defined in the case law, sufficient to challenge respondent's administrative orders at issue in this proceeding. Respondent's orders do not adversely affect any protected interest of any appellant. For this reason, we dismiss the appeal thereby, in net effect, affirming the judgment rejecting appellants' challenges to the administrative decision. (See Code Civ. Proc., § 913.)

## FACTS AND PROCEDURAL HISTORY

### *General Background*

In general terms, a person or entity not owning property along a stream or river could, prior to 1914, establish a right to use available water in the stream or river by giving notice of a claim and actually using the water. (See Hutchins, The Cal. Law of Water Rights (1956) p. 86 et seq.) These pre-1914 rights have come to be known as nonstatutory rights of appropriation. (*Id*. at p. 86.) (The law governing riparian use is different (*id*. at pp. 52-56); this case does not involve riparian rights, i.e., the rights

2.

accruing to property owners because their property abuts the river (see *id*. at p. 179 et seq.).)

In 1914, the Water Commission Act went into effect. Thereafter, the right to appropriate water could only be established through a statutory procedure. (Hutchins, The Cal. Law of Water Rights, *supra*, at pp. 94-95.) The Water Commission Act is now codified in the Water Code at sections 100 to 4407.[1] The procedure for granting statutory rights to appropriate water is administered by a body now known as the State Water Resources Control Board, respondent in this appeal (hereafter respondent or the board). (See § 174; Hutchins, The Cal. Law of Water Rights, *supra*, at pp. 96-97.)

Nonstatutory appropriative rights are "senior" or "junior" to one another, normally depending upon the date of appropriation. However, the owner of a nonstatutory right of appropriation is permitted to change the purpose and place of use of the water, and to sell or otherwise transfer the right. (*North Kern Water Storage Dist. v. Kern Delta Water Dist.* (2007) 147 Cal.App.4th 555, 559 (*North Kern*).) Thus, changes in ownership of nonstatutory rights of appropriation do not alter the seniority—that is, the relative priority—of such rights, but such changes in use or ownership must not injure others with rights in the watercourse. (*Ibid*.) All use of water must be reasonable and beneficial. (*Ibid*.; see Cal. Const., art. X, § 2 [rights limited to water "reasonably required for the beneficial use to be served"].)

Nonstatutory rights of appropriation have sequential priority. That is, when the river flow is insufficient to supply all appropriators, the highest priority appropriator (usually the right established the earliest) is entitled to its full appropriation before the next highest is entitled to any, and so forth, throughout the hierarchy of rights holders; there is no mandatory proration of the available flow of the river. (*North Kern, supra,*

---

[1]     All further statutory references are to the Water Code unless otherwise indicated.

3.

147 Cal.App.4th at p. 561.)  Further, pre-1914 nonstatutory rights have priority over statutory rights granted in Water Code proceedings.  (*North Kern, supra,* at p. 583.)

Appellants North Kern Water Storage District (North Kern), Kern County Water Agency, and Buena Vista Water Storage District own nonstatutory rights to appropriate water from the Kern River.[2]  Appellant City of Shafter apparently does not own rights directly, but uses water supplied through North Kern's rights.

Although there have been sales and consolidations of ownership of Kern River appropriative rights, there have been no new appropriative rights in well over a century.  For example, in a 1964 adjudicative decision of respondent's predecessor agency, which rejected appropriation applications from some of the present appellants, the board found there was no unappropriated water available in the Kern River system.  (Cal. Water Rights Bd., Decision D 1196 (Oct. 29, 1964), p. 5, at <http://www.swrcb.ca.gov/ waterrights/board_decisions/adopted_orders/decisions/d1150_d1199/wrd1196.pdf> [ as of Mar. 20, 2013] (D 1196).)  When there is no water available for new appropriations on a river system, the river is described as "fully appropriated."  Respondent most recently affirmed its order that the Kern River was fully appropriated in 1998.

After the river became fully appropriated, there were periodic disputes among the numerous rights holders, which resulted in a court decree and a contractual agreement that, together, governed operation of the river for most of the 20th Century.  (D 1196, *supra*, at p. 3.)  In 1976, however, one of the rights holders, Kern Delta Water District (Kern Delta), announced plans to increase usage of water over the historical usage of its

---

[2]     The nature of North Kern's right to water from the Kern River is disputed by the City of Bakersfield.  For purposes of this appeal, as we will discuss below, it does not matter whether North Kern owns nonstatutory appropriative rights or, instead, receives water pursuant to an agreement with the owner of such rights.  In either case, the water is taken pursuant to a pre-1914 appropriation.  The present proceeding does not involve an adjudication of North Kern's rights.

4.

predecessors in interest.  North Kern objected and sued to establish that the right to greater usage had been forfeited by Kern Delta's predecessors.  (See *North Kern, supra,* 147 Cal.App.4th at p. 567.)  The case resulted in two long trials and two appeals, at the end of which it was determined that Kern Delta's rights had been reduced through nonuse.  (*Id.* at pp. 581-582.)

The published appellate opinion in *North Kern* noted that appropriative rights holders, junior in priority to the forfeited Kern Delta rights, had the right to the water freed up by the forfeiture judgment to the extent and in the order of seniority of their appropriative rights.  (*North Kern, supra,* 147 Cal.App.4th at p. 583.)  If the forfeiture of rights resulted, however, in water that exceeded the claims of those junior appropriators, such water would be "unappropriated" and would be subject to appropriation through respondent's statutory permitting process.  (*Id.* at pp. 583-584; see also § 1206.)  The *North Kern* opinion concluded that the determination whether a forfeiture resulted in unallocated water—that is, whether the forfeited water exceeded the claims of existing rights holders—was a matter within respondent's administrative jurisdiction and would not be determined in the first instance by the courts in the forfeiture proceedings.  (147 Cal.App.4th at p. 583.)

The determination whether forfeited water rights results in unappropriated water is governed by the statutory procedure established in the Water Code.  Prior to the 1987 enactment of sections 1205 through 1207 (see Stats. 1987, ch. 788), respondent was required to "consider and act upon all applications for permits to appropriate water and to do all things required or proper relating to those applications."  (Legis. Counsel's Dig., Sen. Bill No. 1485, 4 Stats. 1987 (1987-1988 Reg. Sess.) Summary Dig., p. 244.)  The 1987 legislation permitted respondent to adopt a declaration that a river was fully appropriated when, based upon previous water rights decisions, respondent determined "that no water remains available for appropriation."  (§ 1205, subd. (b).)  Once a river system has been designated by respondent as "fully appropriated," the governing statutes

5.

prohibit respondent from accepting and processing applications for new permits to appropriate water from the river (with certain exceptions not relevant here). That was the case concerning the Kern River at the time of the published appellate opinion in *North Kern*. (See *North Kern, supra,* 147 Cal.App.4th at p. 583.) As a result, the first step in determining whether the adjudicated forfeiture of Kern Delta's rights resulted in unappropriated water involves invocation of the statutory process by which respondent reevaluates the fully appropriated status of a river system. While the Water Code prohibits respondent from accepting applications for permits to appropriate water from fully appropriated rivers, the code permits respondent to accept petitions to *revoke or revise* the "fully appropriated" designation of a river system, or to make such a determination on its own motion, after notice and hearing. (§ 1205, subd. (c).)

*The Present Case*

On the same day the Supreme Court denied review of the *North Kern* decision, April 25, 2007, appellants North Kern and City of Shafter filed a petition with respondent to consider the propriety of revoking or revising the declaration that the Kern River was fully appropriated. In the following weeks and months, City of Bakersfield (Bakersfield), Kern Water Bank Authority, and the remaining appellants filed similar petitions. Appellants' petitions were based on similar theories: They contended the Kern River probably remained fully appropriated but the *North Kern* forfeitures presented a reasonable basis for respondent to examine in a formal hearing whether the forfeitures freed additional water for appropriation. Appellants sought to appropriate such water if it was found to exist, but they urged respondent to limit its inquiry to the availability of forfeited water. Bakersfield's petition contended, as the city has throughout these proceedings, that all water rights forfeited through the *North Kern* proceeding became available as unappropriated waters notwithstanding any claims by entities with junior

water rights.[3]  In addition, Bakersfield alleged that water was being taken in excess of various appropriators' rights, requiring respondent's intervention in the allocation of water from the river.[4]  Kern Water Bank Authority's petition contended that the *North Kern* decision constituted a change in circumstances that justified revocation or revision of the "fully appropriated" designation.  In addition, the petition contended that "[s]ince at least 1986" the Kern River Watermaster[5] has been permitting any person or entity to divert from the river any abnormally high water flow that otherwise would be diverted into the California Aqueduct pursuant to the formal policy and agreement among all the holders of appropriative rights to the Kern River, with the implication that such water is in excess of the rights of all such rights holders.[6]  The physical structure through which flood water from the Kern River is diverted into the California Aqueduct is a federal flood control project known as the Intertie.  The purpose of diversion of water into the Intertie is to prevent flooding in the Kern River basin.  The water is transported for use in Southern California; at times of such diversion from the Kern River, the operator of the California Aqueduct reduces the flow of water into the aqueduct from rivers further north

---

[3]    The *North Kern* opinion expressly rejected that contention by Bakersfield.  (See *North Kern, supra,* 147 Cal.App.4th at p. 583.)

[4]    Bakersfield was named in the petition for writ of mandate as a real party in interest.  It has filed a separate brief in this appeal in the same capacity, seeking affirmance of the judgment.

[5]    The watermaster, as the name implies, is charged with allocation of water, resolution of disputes among water claimants, maintenance of records of distribution, and serving as a clearing house for daily orders for water by various rights holders.  In this case, an employee of the Bakersfield Water Resources Department serves as watermaster. An employee of Buena Vista Water Storage District serves as watermaster for diversions from the lower part of the river.

[6]    Kern Water Bank Authority joined in the petition for writ of mandate in the lower court, but is not a party to the present appeal.

7.

in California, in order to create capacity to receive Kern River flood waters. In our discussion of this flood water, we will refer to it as "Intertie water."

After review of materials submitted by the various petitioners, respondent's Chief, Division of Water Rights, determined there was reasonable cause to conduct a hearing on the question of whether the Kern River remained a fully appropriated stream system. (See Cal. Code Regs., tit. 23, § 871, subd. (c)(1), (4).[7]) The memorandum supporting the reasonable cause determination stated the forfeiture decision in *North Kern* "can be considered a change in circumstances" since the previous designation of the river as fully appropriated. However, the primary basis for recommending a hearing was that the diversion of Intertie water "on numerous occasions since its construction in 1977 confirms that there has been a change in circumstances since D1196," the 1964 declaration of fully appropriated status.

The hearing on the petition occurred on October 26 and 27, 2009, before a member of the state water board, appointed as hearing officer for the proceeding. Respondent's Order No. WR-2010-0010, removing the designation of the Kern River as fully appropriated, was adopted by respondent on February 16, 2010. The various parties' petitions for rehearing were denied in Order No. WR-2010-0016, adopted on May 4, 2010.

Order No. WR-2010-0010 reached two conclusions: First, "the evidence presented by the parties did not clearly resolve whether the partial forfeiture of Kern

---

**7** California Code of Regulations, title 23, section 871, subdivision (c)(1) provides in relevant part that a petition to revoke or amend fully appropriated status shall include relevant information from which "the Chief, Division of Water Rights, may determine that reasonable cause exists to conduct a hearing on the question whether the fully appropriated status of the stream system should be revoked or revised." Subdivision (c)(4) provides: "If the Chief determines that the petition shows reasonable cause to conduct a hearing …, the Chief shall notice a hearing on the issue. The board may thereafter adopt an order changing the declaration [of fully appropriated status] or declining to do so."

Delta's rights itself created any additional unappropriated water." Second, the evidence showed that "in nine separate years since 1978" water in excess of water claimed by Kern River rights holders had been diverted into the Intertie as a flood control measure. Because of the evidence that "whenever water has been released into the Intertie in the past, all Kern River water right claims had already been satisfied," "[t]his water is, by definition, unappropriated water." Respondent therefore amended the Declaration of Fully Appropriated Streams "to allow for processing the applications to appropriate water from the Kern River in accordance with the provisions of the Water Code and other applicable law." Order No. WR-2010-0010 expressly recognized that respondent had not determined "the specific amounts of water available for appropriation under the applications, the season of water availability, the public interest in approval or denial of the applications, and any conditions to be included in any permits that may be issued on the applications." The order stated the focus of the board's inquiry "was on the relatively narrow task of determining if the evidentiary record supports revising the fully appropriated status of the Kern River."

The petitions for reconsideration contended that, if there was insufficient evidence to demonstrate that the *North Kern* decision did not result in unappropriated water beyond the claims of existing rights holders, then the petitions to revoke the fully appropriated designation should have been denied. In the alternative, the reconsideration petitions requested that respondent reopen the hearing to receive further evidence concerning the effects of the *North Kern* decision on the fully appropriated status of the Kern River. Finally, with respect to the Intertie water, the petitioners requested that respondent amend the order to "'clearly state that occasional flood flows are not the basis for amending the [fully appropriated stream] declaration absent an application' to place such waters to beneficial use …."

Respondent denied the petitions for reconsideration by Order No. WR-2010-0016. Respondent determined it was under no statutory mandate to determine the availability of

9.

unappropriated water based on the *North Kern* decision "at this stage." All that was required to justify revocation of the fully appropriated designation was a "change in circumstance" that "demonstrates that there is unappropriated water on the Kern River." "[T]he determination whether sufficient unappropriated water is available for the diversion and use proposed under an application can best be decided in proceedings to issue or deny a permit on that application."

Appellants filed a petition for writ of administrative mandate on June 2, 2010. The petition contended respondent acted in excess of its jurisdiction because the water that was the basis for revocation of the fully appropriated designation was flood water lawfully diverted under other laws, and was not unappropriated water over which respondent has jurisdiction. In addition it contended respondent lacked jurisdiction because it had not properly acted on respondent's own motion and it had not actually granted any party's petition for revocation of the declaration. (§ 1205, subd. (c).) The petition asserted that respondent abused its discretion by adopting findings that were not supported by substantial evidence. Finally, the petition claimed that respondent abused its discretion by failing to declare the Kern River continued to be fully appropriated, arguing there was no evidence presented that the *North Kern* decision resulted in any unappropriated water in excess of the rights of junior appropriators.

After receiving points and authorities and holding a hearing on the petition, the trial court denied the petition for writ of administrative mandate. The court rejected Bakersfield's contention that appellants lacked standing to bring the writ petition. It determined any person or entity permitted by section 1205 to file a petition to revoke or revise a fully appropriated declaration retains that statutory standing in any proceeding "to test before a court of law the legality of [respondent's] final decision." The trial court determined respondent was not required under the terms of the *North Kern* decision to resolve in the present proceeding whether the decision resulted in unappropriated water. The court determined respondent had jurisdiction to conduct the hearing under

10.

section 1205, subdivision (c). The trial court concluded substantial evidence supported respondent's determination that the water diverted into the Intertie was unappropriated and that this determination supported further proceedings on applications for new appropriations of that water. After receiving written objections to the ruling, the trial court issued a final judgment on July 21, 2011, adopting the court's June 14, 2011, statement of decision and denying the petition for writ of administrative mandate.

## DISCUSSION

At the trial court hearing, respondent and Bakersfield contended appellants had not demonstrated any manner in which they were adversely affected by respondent's Order Nos. WR-2010-0010 and -0016. In their initial briefs on appeal, no party renewed this contention. Pursuant to Government Code section 68081, this court requested appellants address this issue by supplemental brief. (See *Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117, 129 [appellate court may raise issues on its own motion if it complies with Gov. Code, § 68081].)

Code of Civil Procedure section 1086 provides that a writ of mandate "must be issued upon the verified petition of the party beneficially interested" when an administrative board has denied the petitioner "use and enjoyment of a right or office to which the party is entitled …" (*id*., § 1085). (See also *id*., § 1094.5 [standards for issuance of properly filed writ after final administrative order or decision]; *Sacramento County Fire Protection Dist. v. Sacramento County Assessment Appeals Bd.* (1999) 75 Cal.App.4th 327, 331 ["beneficial interest" requirement applies both to ordinary mandate and administrative mandate proceedings].) A party is "'beneficially interested'" for these purposes if the party has "'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (*People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 986.) This standard, the Supreme Court has stated, "'is equivalent to the federal "injury in fact" test, which requires a party to prove by a preponderance of the evidence

11.

that it has suffered "an invasion of a legally protected interest that is [both] '(a) concrete and particularized, and (b) actual or imminent ….'"" [Citation.]" (*Ibid.*; see also *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.)

*Savient Pharmaceuticals, Inc. v. Department of Health Services* (2007) 146 Cal.App.4th 1457, provides an example of the "beneficial interest" requirement. Savient was the manufacturer of a drug used in certain instances to treat a condition related to HIV. The Department of Health Services (the department) had a program under which certain HIV drugs were provided to persons not eligible for Medi-Cal. At various times, due to the cost of Savient's drug and the budgetary restrictions on the program, the drug was listed and delisted for use on certain male patients. (*Id*. at pp. 1461-1463.) The program was administered by Ramsell Corporation under a contract with the department. The department, however, was the only entity involved in the decision to delist Savient's drug. (*Id*. at p. 1463.) After the department delisted Savient's drug, Savient filed a petition for writ of mandate in which it sought "to invalidate the delisting and to nullify the Department's contract with Ramsell." (*Id*. at p. 1461.) The trial court, among other rulings, concluded Savient lacked standing to challenge the contract between the department and Ramsell. The Court of Appeal affirmed this ruling. (*Id*. at p. 1465.) After setting forth the requirements for "beneficial interest" established in prior Supreme Court cases, the *Savient* court concluded that "[n]othing done by virtue of the Ramsell contract hurt Savient. Because the contract did not specially aggrieve Savient, it lacks standing to attack the contract." (*Ibid*.)

The Water Code provides a similar standard specifically applicable in the present case: "Any party aggrieved by any decision or order may, not later than 30 days from the date of final action by the board, file a petition for a writ of mandate for review of the decision or order." (§ 1126, subd. (b).) In *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, the Court of Appeal concluded the language of section 1126 incorporated the same requirements of a direct and immediate injury that is encompassed

in the "beneficial interest" standard of the general mandamus statute. (136 Cal.App.4th at pp. 829-830.) In addition, the court concluded the "'aggrieved'" requirement of section 1126 adopted the same standards of direct and immediate injury encompassed in the statutory requirement that only an "'aggrieved'" party is permitted to appeal from a civil judgment. (136 Cal.App.4th at p. 829.)

In the relevant portion of *State Water Resources Control Bd. Cases*, *supra*, 136 Cal.App.4th, owners of land outside the designated geographic area for use of irrigation water supplied by certain appropriators (*id*. at p. 821, fn. 60), contended on appeal that the board had erred in imposing environmental impact measures when it expanded the geographical service area to include the owners' land in an expanded-use area. (*Id*. at p. 828.) The Court of Appeal noted the mitigation measures were applicable only to the original appropriator, the United States Bureau of Reclamation (Bureau), as operator of the Central Valley Project. (*Id*. at pp. 829-830; see *id*. at pp. 687-688.) The court found that because the board had not imposed any mitigation measures on the land owners and "there [was not] any evidence in the record the Bureau intended to pass on the cost of mitigation" to the land owners, they were not aggrieved by the board's order. (*Id*. at p. 830.) The owners also contended they were aggrieved by the uncertainty created by the possibility the Bureau would impose fees for mitigation in the future, and the prospect of "'the expense, delay and risk of going through another prolonged and expensive administrative proceeding'" to prove their lands were not subject to the mitigation requirements. (*Ibid*.) The court concluded this speculative injury did not constitute an "immediate, pecuniary, and substantial injury" that supported standing to pursue the appeal. (*Id*. at p. 831.)

In the present case, respondent has not even purported to adjudicate water rights. Instead, Order No. WR-2010-0010 specifically provides that no determination has been made concerning the amount of water that will be taken by existing rights holders, and that this will be an issue only in future proceedings in which applicants for new water

13.

permits will be required to prove "when and how much available water there is for appropriation." Further, no permit for new appropriation of water will affect the holders of nonstatutory appropriative rights. (*North Kern, supra,* 147 Cal.App.4th at pp. 583-584; see *Allen v. California Water & Tel. Co.* (1946) 29 Cal.2d 466, 489.)

The trial court ruled that any party with standing to initiate *administrative* proceedings as an "'interested person'" under section 1205 must also be entitled to initiate *judicial* proceedings to review "the legality" of any resulting administrative decision. In the cases cited for that proposition, however, the party who sought judicial review was in fact aggrieved by the outcome of the administrative hearing. Thus, in *Bodinson Mfg. Co. v. California Emp. Com.* (1941) 17 Cal.2d 321, an employer sought review of an administrative order awarding unemployment benefits to its former employee. (*Id*. at p. 324.) First, the court noted that an employer was specifically permitted by the statute to intervene in an unemployment compensation hearing as an "interested party." Second, although the court did state that, "it seems to us that elemental principles of justice require that parties to the administrative proceeding be permitted to retain their status as such throughout the final judicial review by a court of law, for the fundamental issues in litigation remain essentially the same," this statement was dicta. (*Id*. at p. 330.) The issue before the court was not whether a party which had not been adversely affected by the administrative order could petition for mandamus review. Instead, the court noted that the employer's reserve account—its required contribution to the unemployment compensation fund—would be affected by the compensation award; accordingly, "it seems apparent that the employer whose reserve account is affected is the only person having sufficient incentive to challenge a decision awarding benefits. Action by this employer provides the only procedural guarantee that the commission can be held by legal process to comply with the requirements of the statute under which it operates." (*Ibid*.) Thus, in *Bodinson*, the party which sought judicial review was aggrieved by the administrative order.

14.

In *Temescal Water Co. v. Department of Public Works* (1955) 44 Cal.2d 90, the board issued a water appropriation permit to a conservation district allowing it to take water from a creek. The appellants were appropriators with existing rights; they filed a petition for writ of mandate to challenge the administrative order. Judgment for the board was granted after its demurrer to the petition was sustained. (*Id*. at p. 93.) The primary issue in the case was the appellants' claim that the board was not entitled to determine, in the course of considering an application for a new appropriation permit, that there was unappropriated water in a stream, in other words, that the determination of unappropriated water was a judicial function in the first instance, not a matter for administrative order. (*Id*. at p. 94.) The court rejected this contention, and held that the board was permitted to determine whether unappropriated water exists as part of its consideration of an application for a new permit. (*Id*. at p. 106.) "If the [board] erroneously concludes that unappropriated water is available to supply an applicant when there is no reasonable expectation of such a supply, the error may be corrected upon a review of the determination. But a holding that such a danger is so imminent as to justify an independent judicial proceeding to determine the availability of unappropriated water before the [board] considers an application, would deprive the administrative proceeding of all of its proper functions in the issuance of a permit." (*Ibid*.) After concluding the issue was properly addressed in the administrative proceedings, the court briefly addressed the board's claim that the appellants were not interested parties in the administrative hearing nor parties with a beneficial interest sufficient to support mandamus relief. (*Id*. at p. 107.) In permitting the appellants to amend their petition to allege they had appeared in the administrative hearing and had objected to the application for a new permit, the court stated: "[S]tatutory authority allows them to present a protest to the application before the [board] … and, if upon amendment to their petition they show their participation as interested parties in that proceeding, they *may* establish *as well* their interest in a judicial proceeding to review the [board's] determination." (*Ibid*.,

15.

italics added.)  The clear implication of the quoted passage, which cites to *Bodinson Mfg. Co. v. California Emp. Com., supra,* 17 Cal.2d at page 330, as its sole supporting authority, is that the appellants might, upon filing an amended complaint, be able to allege a beneficial interest that was adversely affected by the order granting the new permit; the court did not hold that, merely by participating in the administrative hearing, the appellants automatically were entitled to maintain a petition for writ of mandamus.

The mere fact that a party has standing to participate in a proceeding in the original tribunal does not mean the party is entitled to appeal from that proceeding no matter what the result in the proceeding.  There is an additional requirement that the party be "aggrieved," in a civil proceeding or under section 1126, subdivision (b) of the Water Code, or a party be "beneficially interested" under Code of Civil Procedure section 1086.  A party who has received essentially the relief it sought in the trial court is not permitted to appeal from the resulting order, even though the order, in the abstract, is an appealable order.  (*Hensley v. Hensley* (1987) 190 Cal.App.3d 895, 898.)  There is no logical reason the same rule should not apply to review of administrative orders.  (See *Save the Plastic Bag Coalition v. City of Manhattan Beach, supra,* 52 Cal.4th at p. 165.)  Unlike *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 206, there is no potential that respondent's administrative order will reduce, directly or indirectly, the water available to appellants under existing appropriative rights.

In rare instances, courts may grant "public interest" standing to a party who seeks review of an administrative decision.  (*Save the Plastic Bag Coalition v. City of Manhattan Beach, supra,* 52 Cal.4th at p. 166.)  Such standing is permitted when the issue involves a "'public right'" and the mandate petition seeks enforcement of a "'public duty.'"  (*Ibid.*)  "No party … may proceed with a mandamus petition as a matter of right under the public interest exception," however, and permitting a party to proceed on that basis is an exception to the usual "beneficial interest" requirement.  (*Id.* at p. 170, fn. 5.)  Even when the requirements for public interest standing are met, "'[t]he policy

16.

underlying the exception may be outweighed by competing considerations of a more urgent nature.'" (*Ibid.*) In the present case, respondent generally recognizes the requirement that any permits it grants for appropriation of water will be subordinate to the existing interests of pre-1914 appropriators. Accordingly, there is no significant need for judicial intervention at this time to restrain the acts of an administrative agency that will, or is poised to, overstep its statutory authority. In the unlikely event respondent does issue permits that somehow impinge upon existing nonstatutory rights of appropriation, the injured parties at that point will have ample opportunity to obtain judicial review of respondent's actions. (See *Sacramento County Fire Protection Dist. v. Sacramento County Assessment Appeals Bd., supra,* 75 Cal.App.4th at p. 334 ["This is not a situation where the issue raised by the District will be removed from judicial review if standing is denied."].) Accordingly, we conclude the present case, at this preliminary stage of the administrative proceeding, is not an appropriate case in which to confer public interest standing upon these appellants.

We wish to emphasize one further point. Throughout these proceedings, the parties and the board have used the words "appropriated" and "unappropriated" in two different senses, producing some confusion. In water law, "appropriated" refers to water to which a nonriparian owner asserts an enforceable right to take or use water. "Unappropriated" water is that water flowing in the streambed in excess of the rights claimed by appropriative and riparian users. (See §§ 1202, 1205, subd. (b).) In other words, "appropriated" and "unappropriated" refer only to the right to take or make use of water for a beneficial purpose. In common usage outside the realm of water law, "appropriated" means actual possession of or use of, whether with or without claim of right. (See American Heritage Dict. (3d college ed. 2000) p. 67, col. 1 [second meaning of "appropriate"].) Similarly, in common usage, something that is "unappropriated" has not actually been taken by anyone. Actual usage, rather than the right to use, is at the core of this common meaning of the terms.

17.

Both of these meanings of "appropriated" and "unappropriated" have been used in the present case.**8** The evidence was clear, and essentially uncontroverted, that during occasional flood years water that is unappropriated—not physically claimed by any entity with a right to the water—has been diverted into the California Aqueduct and has been used, without claim of right, by Southern California water interests. Nevertheless, there was no evidence, and respondent's administrative orders do not conclude, that the nonuse of flood water has resulted in the loss of the enforceable right to take or use. Forfeiture of the right to appropriate water occurs only upon the failure of a rights holder to beneficially use water in five consecutive years (§ 1241; *North Kern, supra,* 147 Cal.App.4th at p. 560). There is no evidence of this, and respondent has not determined there is unappropriated water resulting from such continued lack of beneficial use.

Respondent has neither asserted nor exercised the power to reduce the appropriative rights pursuant to which appellants now receive water. Accordingly, appellants are not aggrieved parties with a beneficial interest to support their petition for writ of administrative mandate, nor are they aggrieved parties entitled to maintain an appeal from the judgment denying their petition.

---

**8** For example, at the hearing in this case, the trial court asked: If "[n]ot all [appropriative] rights are exercised all the time," is the resulting water unappropriated? Respondent's counsel answered: "It's unappropriated, absolutely. 'Unappropriated' means it's -- it hasn't been used." Similarly, respondent's counsel stated later in the hearing: "There is no determination in this order about water rights, who has water rights, who has what. It's about the physical availability of water."

# DISPOSITION

The appeal is dismissed.  As a result, the judgment affirming the administrative decision is affirmed.  Respondents are awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
DETJEN, J.

WE CONCUR:


_____
CORNELL, Acting P.J.


_____
PEÑA, J.